**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
JUDICIAL WATCH, INC.              :
                                  :
    **Plaintiff,**                 :
                                  :
        **v.**                   : Civil Action No. 01-639 (GK)
                                  :
UNITED STATES DEPARTMENT          :
OF JUSTICE,                       :
                                  :
    **Defendant.**                 :
_____:

**MEMORANDUM OPINION**

     Plaintiff, Judicial Watch, Inc., a non-profit public interest organization, filed this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 et seq., case against the United States Department of Justice ("DOJ"), seeking documents concerning pardon applications considered or granted by former President Clinton.

    This matter is now before the Court, after a remand by the United States Court of Appeals for the District of Columbia Circuit, on Defendant's Renewed Motion for Summary Judgment. Upon consideration of the Motion, Opposition, Reply, and the entire record herein, Defendant's Motion, [#55], is **granted**.

**I. BACKGROUND**

    Plaintiff made identical FOIA requests to two components of the DOJ, namely the Office of the Pardon Attorney and the Office of the Deputy Attorney General, on January 29, 2001, and February 22, 2001, respectively. Plaintiff's request sought all documents that

"refer or relate . . . in any way" to pardon applications considered or granted by former President Clinton.

On March 23, 2001, Plaintiff filed this FOIA suit based on its request to the Office of the Deputy Attorney General. Thereafter, the Government released thousands of pages responsive to Plaintiff's request, but withheld 4,341 pages pursuant to the presidential communications privilege of FOIA Exemption 5, see 5 U.S.C. § 552(b)(5), and, to the extent those pages contained personal information about living individuals, pursuant to FOIA Exemption 6, see id. § 552(b)(6). The Government withheld an additional 524 pages under Exemption 6.

The Government then filed a motion for summary judgment, which this Court granted. See Judicial Watch, Inc. v. Dep't of Justice, 259 F. Supp. 2d 86 (D.D.C. 2003). This Court agreed with the Government that all 4,341 pages were properly withheld under the presidential communications privilege pursuant to Exemption 5, and rejected Plaintiff's position that Exemption 5 did not apply to documents not involving White House staff. This Court also held that the Government had properly withheld 524 pages under Exemption 6. Id.

Plaintiff appealed, and the D.C. Circuit affirmed in part and reversed in part.[1] The D.C. Circuit held that "the presidential

---

[1] The D.C. Circuit affirmed this Court's ruling with respect to documents withheld under Exemption 6 and Plaintiff's request for a blanket waiver of FOIA processing fees.

communications privilege applies to pardon documents 'solicited and received' by the President or his immediate advisers in the Office of the President, and that the deliberative process privilege [another privilege within FOIA Exemption 5] applies to internal agency documents that never make their way to the Office of the President." Judicial Watch, Inc. v. Dep't of Justice, 365 F.3d 1108, 1123 (D.C. Cir. 2004). Accordingly, the D.C. Circuit remanded the case "for the district court to determine whether the Department's internal documents not 'solicited and received' by the President or the Office of the President are protected from disclosure under the deliberative process privilege." Id. at 1109.

Following the remand, this Court issued an Order requiring Defendant to re-process the pages of documents it had originally withheld to determine, in accordance with the D.C. Circuit's ruling, which pages it could continue to withhold under the presidential communications privilege, and which ones could be withheld under the deliberative process privilege. See Sept. 14, 2004 Order, Docket # 52.

Defendant re-processed the documents, and located 5587 pages responsive to Plaintiff's FOIA request in the Office of the Deputy Attorney General. Of those 5587 pages, Defendant released to Plaintiff 1015 pages in full and 930 pages in part pursuant to FOIA Exemptions 5 and 6. Defendant withheld 3642 pages in full – 1527 of them pursuant to the presidential communications privilege of

Exemption 5, 1630 of them pursuant to the deliberative process privilege of Exemption 5, and one page pursuant to Exemption 6. Defendant submitted an Updated <u>Vaughn</u> Index to reflect these withholdings, and explained that all of the documents in categories 1, 2, 4, 6-17, 19-25, and 27-33 which were withheld pursuant to the deliberative process privilege were also withheld pursuant to Exemption 6. Updated Pustay Decl. at ¶¶ 38-39. The Index groups the documents withheld in full or in part into 34 categories, provides the number of pages withheld in each category, and states the exemption[s] under which each category of documents has been withheld.

Defendant has now moved for summary judgment, relying upon its Updated <u>Vaughn</u> Index and the sworn declarations of Roger C. Adams, the United States Pardon Attorney and Melanie Ann Pustay, the Deputy Director of the Office of Information and Privacy.[2]

## II. STANDARD OF REVIEW

Summary judgment will be granted when the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

---

[2]   Pustay is the "final decision-making authority for the Initial Request (IR) staff," which is "responsible for searching for and reviewing records within OIP and the senior leadership offices of the Department of Justice, including the Office of the Deputy Attorney General, in response to requests made" under FOIA. Def.'s Mot., Ex. 1 ("Updated Pustay Decl.") at ¶ 1.

to judgment as a matter of law.   Fed. R. Civ. P. 56(c).

In a FOIA case, the district court conducts a de novo review of the government's decision to withhold requested documents under any of FOIA's specific statutory exemptions.   5 U.S.C. § 552(a)(4)(B).   The burden is on the agency to show that nondisclosed, requested material falls within a stated exemption. Petroleum Info. Corp. v. U.S. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)).   In this Circuit, the agency is obligated to submit a Vaughn Index of all responsive material it has withheld, either in whole or in part, under any FOIA exemption.   Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977 (1974).

A court may award summary judgment in a FOIA case solely on the basis of information provided in agency affidavits or declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."   Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).   Thus, for summary judgment to be appropriate, the agency's Vaughn Index must set forth with particularity the justification for the exclusion, relating it to the particular part of the document to which it applies, Mead Data Central, Inc. v. U.S. Dep't of Air Force, 566

F.2d 242, 251 (D.C. Cir. 1977), and the agency's affidavits supporting the <u>Vaughn</u> Index must not be conclusory or too broadly sweeping, <u>King v. U.S. Dep't of Justice</u>, 830 F.2d 210, 219 (D.C. Cir. 1987).

## III. ANALYSIS

The Government argues that it is entitled to summary judgment because the Updated <u>Vaughn</u> Index, combined with the Declarations of Adams and Pustay, establish that it has provided Plaintiff with all documents responsive to its request except for those that are protected from disclosure under a specific FOIA Exemption.

Plaintiff concedes in its Opposition that it "is not challenging any of Defendant DOJ's withholdings pursuant to the presidential communications privilege or FOIA Exemption 6. Therefore, only DOJ's withholdings pursuant [to] the deliberative process privilege remain at issue in this case." Pl.'s Opp'n at 2. Accordingly, this Court's analysis will be limited to the 1630 pages Defendant withheld pursuant to the deliberative process privilege of FOIA Exemption 5.

### A.   The Deliberative Process Privilege

FOIA Exemption 5 allows the Government to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the agency." 5 U.S.C. § 552(b)(5). This Exemption protects against disclosure of those documents normally privileged in the civil

discovery context.   Judicial Watch, 365 F.3d at 1113 (citation omitted).  Exemption 5 includes the deliberative process privilege, which protects "confidential intra-agency advisory opinions" and "materials reflecting deliberative or policy-making processes." In re Sealed Case, 121 F.3d 729, 737 (D.C. Cir. 1997).  The purpose of the privilege "'is to prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." Id.  (quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975)).

As the D.C. Circuit has explained, "[t]wo requirements are essential to the deliberative process privilege:  the material must be predecisional and it must be deliberative." In re Sealed Case, 121 F.3d at 737 (citing Army Times Publ'g Co. v. Dep't of the Air Force, 998 F.2d 1067, 1070 (D.C. Cir. 1993); Wolfe v. Dep't of Health and Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (en banc)).  A document is predecisional if "it was generated before the adoption of an agency policy." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980).  A document is deliberative if it "reflects the give-and-take of the consultative process." Id. at 866.  Material is often found to be deliberative if its disclosure would tend to "discourage candid discussion within an agency." Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991) (internal citations omitted).

"The deliberative process privilege does not shield documents

7

that simply state or explain a decision the government has already made or protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations." In re Sealed Case, 121 F.3d at 737 (citations omitted). However, "in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged." Petroleum Info. Corp., 976 F.2d at 1434 (quoting Mead Data, 566 F.2d at 256).

**B.   The Government's Descriptions and Categorization of Documents Partially and Fully Withheld Are Sufficient**

Plaintiff claims that Defendant's Updated Vaughn Index inadequately describes and categorizes the documents partially and fully withheld.

Plaintiff argues that with respect to the partially redacted documents, it was unable to "determine precisely into which of the 34 categories any particular redacted document falls." Pl.'s Opp'n at 7. On March 21, 2005, after Plaintiff filed its Opposition, the Government "provided Plaintiff with a new set of the released documents grouped according to the category of the Updated Vaughn Index that covers them." Def.'s Reply at 2 (citing Letter from Melanie Ann Pustay to Christopher Farrell (March 21, 2005)). By doing this, the Government cured whatever defect may have existed with respect to its categorization of partially redacted documents,

rendering Plaintiff's argument moot.[3]

Plaintiff further argues that the Government's description of
its withholdings was "too sparse," precluding the opportunity for
an "adequate adversary testing" of the exemptions Defendant has
claimed.  Pl.'s Opp'n at 7 (citing Vaughn, 484 F.2d at 828).  Upon
review of the Updated Vaughn Index, however, the Court disagrees.

The Updated Vaughn Index groups the documents withheld in full
or in part into 34 categories.  Def.'s Mot., Ex. 1.  Each category
description provides information as to the type of document (fax,
memorandum, e-mail, etc.), the authors and the recipients, the
subject matter of the documents, and information indicating that
the documents were both pre-decisional and deliberative.  For
example, category 7 of the Updated Vaughn Index describes an "E-
mail within the Department of Justice, among officials in ODAG and
OPA transmitting information on particular pardons, and requesting
information, such as warrants and background investigations.  There
is also discussion on language for letters of advice."  Id.  For
each category, the Government indicates the number of pages as well
as the exemptions under which the pages were withheld.

The Updated Pustay Declaration provides even more detail
regarding the withheld documents.  For example, Pustay states:

> Most of the withheld documents are part of the exchange
> of ideas and suggestions that accompanies all decision-
> making and typically reflect the staff members'

---

[3] Plaintiff could have moved to file a Sur-reply if it still
objected to the new categorization of documents.

> preliminary assessments about issues in [sic] which they
> have been asked to make recommendations.  For example,
> categories seven and twenty consist of internal agency e-
> mails and category twenty-five consists of memoranda all
> exchanged among various employees of the Department about
> particular pardon applicants.  These documents discuss
> the merits of particular cases and seek further
> information about particular cases.

Updated Pustay Decl. at ¶ 26; see also id. at ¶¶ 23, 24, 26, 27,

29, 31, 33, 36.

The Court finds that the Government's Updated Vaughn Index and

the Updated Pustay Declaration provide sufficient detail to show

that the documents withheld contain information which, if released,

would provide insight into the deliberative process involved in

processing pardon applications.[4]

As Pustay explains in great detail and at great length,

> [d]isclosure of the records in this case would prevent
> staff who prepare these documents from freely expressing
> their recommendations and giving advice about both
> current applicants and future courses of action. A staff
> member who is aware that his or her proposed
> recommendation may be released to the public may not be
> as forthcoming as he or she would otherwise be.  That
> staff member may be more concerned with the public
> perception of the document he or she is drafting than
> with providing the necessary information to the Deputy
> Attorney General and ultimately the President.  This
> inhibition would be extremely detrimental to the Deputy
> Attorney General, who relies on such advisors for their
> complete, candid opinions. By affording confidentiality
> to agency deliberations such as these, decision-makers,
> including the Deputy Attorney General himself, can
> operate most effectively.

---

[4]  The Court has reviewed all of the category descriptions in
the Updated Vaughn Index.  Each one provides information similar to
that contained in category 7, and in many cases provides even more
detail.

Updated Pustay Decl. at ¶ 25.

Pustay further attests that

[t]he Deputy Attorney General needs to know that his
advice to the President will remain confidential so that
he can give the President all the information he needs
without being concerned about publicity or political
fall-out.  The Deputy Attorney General should be able to
focus exclusively on his role in advising the President
on the merits of a given case.   This cannot be
accomplished if the Deputy Attorney General is encumbered
by the concern that his candid recommendations might be
publicly disclosed.

Updated Pustay Decl. at ¶ 32; see also Judicial Watch, 365 F.3d at

1117.

Through the Updated Vaughn Index and the Updated Pustay

Declaration, the Government has met its burden of showing that its

withholdings fall within Exemption 5.   The Government's

justifications for nondisclosure are "reasonably specific," and

"demonstrate that the information withheld logically falls within

the claimed exemption."   Military Audit Project, 656 F.2d at 738.

**C.   The Government Has Established that It Has Released All
Reasonably Segregable Information**

FOIA provides that "[a]ny reasonably segregable portion of a

record shall be provided to any person requesting such record after

deletion of the portions which are exempt under this subsection."

5 U.S.C. § 552(b).  Segregable information need not be disclosed if

it is "inextricably intertwined" with exempt material.  See Johnson

v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C.

Cir. 2002).

To show that all reasonably segregable information has been released, the Government must provide a "detailed justification" for its withholdings.  Id. (citing Mead Data, 566 F.2d at 260). The Government need not provide so much detail that the exempt material would be effectively disclosed.  Id.  All that is required is that the Government establish with "reasonable specificity" that a document can not be further segregated.  Johnson, 310 F.3d at 776.  The agency carries the burden of showing that no segregable information exists.  Army Times Publ'g Co., 998 F.2d at 1071.

Plaintiff argues that Defendant failed to release all reasonably segregable information.  Pl.'s Opp'n at 9.  In support of its argument, Plaintiff attaches as exhibits to its Opposition several documents which are heavily redacted, and argues that the Government failed to give "any indication as to whether non-exempt information has been segregated out . . . ."  Id.

Plaintiff is mistaken.  Pustay very clearly declares, under penalty of perjury, in her Updated Declaration that "all reasonably segregable information has been disclosed."  Updated Pustay Decl. at ¶ 40.

Pustay explains that after the D.C. Circuit remanded the case, her office reviewed the withheld documents for a second time. Updated Pustay Decl. at ¶ 13 (emphasis added).  "An additional 915 pages containing reasonably segregable material had been identified.  OIP provided twenty-five pages in full, and 890 pages

with excisions made pursuant to Exemptions 5 and 6 of the FOIA, to plaintiff." Id. ¶ 14. For categories 8, 9, 13, 15, 16, 19, 22-24, 33, one page in category 29, and 142 pages of charts in category 31, Pustay states that "there is no reasonably segregable factual information that is not covered by the deliberative process privilege." Id. ¶ 36.

With respect to the remaining 19 categories of documents, Pustay again states, under oath, that all reasonably segregable information was disclosed:

> The remaining nineteen categories of records . . . are deliberative in part and all reasonably segregable information has been disclosed. Those portions of these documents which contain the deliberations of the officials involved in the pardon recommendation process, including the selected facts used in those discussions, are being protected, as discussed above, under the deliberative process privilege.

Id. ¶ 37.

While it is true that certain documents are almost entirely redacted, there is nothing in the record to indicate that such redactions are inappropriate. As noted above, "in some instances, 'the disclosure of even purely factual material may so expose the deliberative process within an agency' that the material is appropriately held privileged." Petroleum Info. Corp., 976 F.2d at 1434 (quoting Mead Data, 566 F.2d at 256).

That is precisely the case with respect to certain documents concerning pardon applications. As the Government notes, such documents may contain "actual recommendations given by the Deputy

Attorney General and his advisors on particular cases, the bases on which such recommendations are made (i.e., summaries of pertinent facts or statements of the respective merits of pardon applications), the opinions that were solicited from third-parties, such as sentencing judges, and the identity of information that is being sought with respect to individual pardon applications." Def.'s Mot. at 8.

In such documents, "factual" information, which in other contexts might be segregable, could very well reveal the deliberative process of the Government. As Pustay explains:

> [T]he facts included in the documents have been selected by the author of the document from the exceedingly broad panoply of facts applicable to any given pardon applicant – facts concerning, for example, his crime, his sentence, his life, the victim's life, etc. The very act of selecting those facts which are significant from those that are not, is itself a deliberative process . . . Moreover, revealing which facts any given official has selected or focused on in the course of conducting their analysis or making their recommendation could expose the underlying deliberative process itself.

Updated Pustay Decl. ¶¶ 34-35 (discussing facts within documents withheld in categories 2, 4, 6-13, 15-17, 19-25, 27-30, 33 of the Updated Vaughn Index).

Upon review of the Government's Vaughn Index and the Updated Pustay Declaration, the Court is satisfied that the Government has met its burden of showing with "reasonable specificity," that it has released all reasonably segregable information. Johnson, 310 F.3d at 776 (citing Armstrong v. Executive Office of the President,

97 F.3d 575, 578-79 (D.C. Cir. 1996)).

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Renewed Motion for Summary Judgment, [#55] is **granted** and this case is **dismissed**.  An Order will issue with this Memorandum Opinion.


                                          /s/
July 19, 2006                        GLADYS KESSLER
                                     UNITED STATES DISTRICT JUDGE


**Copies to: Attorneys of record via ECF**